IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No.:

**JEFFREY HALE (personally and as personal representative of the Estate of Jesselyn Hale and the Special Conservator of D.K.L. (a minor)),**

    *Plaintiff,*

vs.

**AMERICAN INTERNATIONAL GROUP, INC. (D/B/A AIG) and**

**NATIONAL UNION FIRE INS. CO. OF PITTSBURGH, PA,**

    *Defendants.*

## COMPLAINT

Plaintiff, Jeffrey Hale ("Mr. Hale") (personally and as personal representative of the Estate of Jesselyn Hale and the Special Conservator of D.K.L. (a minor)), for his Complaint against American International Group, Inc., (D/B/A AIG) and National Unition Fire Ins. Co. of Pittsburgh, PA, states and alleges as follows:

### JURISDICTION & VENUE

1. This is an action arising under the Employee Retirement Income Security Act of 1974, as amended ("ERISA"), 29 U.S.C. § 1001, *et seq.*

2. The Court has subject matter jurisdiction over the action under 28 U.S.C. §§ 1331 and 1332 (e) and (f).

3. The Court has personal jurisdiction over each Defendant, as each Defendant conducts business within the District of Colorado.

1

4. Venue is proper in this Court under 28 U.S.C. § 1391(a) & (b) and 29 U.S.C. 1132(e)(2).

## PARTIES

5. Mr. Hale is, and at all times pertinent was, a resident of the State of New Mexico.

6. Mr. Hale's now-deceased daughter, Jesselyn Hale, was at all times pertinent a resident, citizen, and domiciliary of the State of Colorado.

7. At the time of her death, Ms. Hale was insured under a Group Accident Insurance Policy No. GTP0009150557-B (the "Policy") provided to her by her employer, Uber Technologies, and underwritten by National Union Fire Insurance Company of Pittsburgh, PA, ("National Union").

8. A true and correct copy of the Policy is attached as **Exhibit 1**.

9. The Policy was issued, delivered, or renewed in the State of Colorado after August 5, 2008.

10. The Policy provided benefits to a resident or domiciliary of the State of Colorado after August 5, 2008.

11. The Policy was offered as part of an employee benefit plan covering a resident or domiciliary of the State of Colorado after August 5, 2008.

12. Ms. Hale named her minor daughter, D.K.L., as her beneficiary under the Policy.

13. By court order, Mr. Hale has been designated as the Special Conservator of D.K.L. pursuant to C.R.S. § 14-14-412(3).

14. Mr. Hale has been designated as the personal representative of the Estate of Jesselyn Hale.

15. Upon information and belief, National Union is an entity incorporated under the laws of the State of Pennsylvania, with its principal place of business in New York, New York.

16. Upon information and belief, National Union is authorized to conduct (and does conduct) the business of insurance within the State of Colorado.

17. Upon information and belief, National Union is a fully owned subsidiary of the American International Group ("AIG").

18. Upon information and belief, AIG is an entity incorporated under the laws of the State of Illinois, with its principal place of business in New York, New York.

19. Upon information and belief, AIG is authorized to conduct (and does conduct) the business of insurance within the State of Colorado.

## GENERAL ALLEGATIONS

20. Under the Policy, National Union promised that if Jesselyn Hale suffered an injury that resulted in death within 365 days of the date of the accident that caused the injury, it would pay her beneficiary 100% of the "Principal Sum."

21. Under the Policy, National Union defined the term "accident" to mean "a sudden, incidental, undesirable or unfortunate event, happening or circumstance, often with lack of intention or necessity, that causes injury."

22. Under the Policy, National Union defined the term "Principal Sum" to mean three times the insured's annual salary, rounded to the next highest $1,000 if not already an even multiple thereof, to a maximum of $1,000,000.00."

23. Under the Policy, National Union excluded from coverage those accidents "resulting from" specific causes, including injuries resulting from "the Insured Person being intoxicated or under the influence of any controlled substance unless taken under the advice of a Physician."

24. The Policy was in force with all premiums paid as of June 28, 2019, which is the day on which Ms. Hale was pronounced deceased.

## *The Event Triggering Defendants' Duties Under the Policy*

25. Jesselyn Hale was just a few weeks shy of her 29th birthday when she died unexpectedly while on a business trip in Tacoma, Washington, leaving behind a fractured family including her heartbroken father, mother, and her four-year-old daughter, D.K.L.

26. Ms. Hale's death was investigated by the Bellevue Police Department, the King County Medical Examiner's Office, and the State of Washington Department of Health.

27. The Bellevue Police Department concluded that Ms. Hale's death was an accident.

28. The King County Medical Examiner's Office concluded that Ms. Hale's death was an accident.

29. The State of Washington Department of Health concluded that Ms. Hale's death was an accident.

30. Ms. Hale died within 365 days of the date of the accident that caused the injuries from which she died.

31. By letter dated February 21, 2020, Mr. Hale, as the personal representative of the Estate of Jesselyn Hale and the Special Conservator of D.K.L., submitted a claim for benefits under the Policy (the "Claim").

32. By letter dated February 27, 2020, AIG (acting on behalf of National Union) requested additional information, including autopsy records and toxicology reports.

33. By letter dated March 10, 2020, Mr. Hale provided AIG with the additional information it requested, including autopsy records and toxicology reports.

34. Over two months later, by letter dated May 14, 2020, AIG (on behalf of National Union) denied the Claim for benefits under the Policy.

35. In denying the Claim for benefits, AIG (on behalf of National Union) asserted two bases for denying the Claim for benefits under the Policy.

4

36. The first reason AIG (on behalf of National Union) asserted for denying the Claim was that "it is not possible to determine that the injuries sustained were the direct result of an unanticipated event" because "[t]he record does not indicate how Ms. Hale came to fall from her hotel balcony, other than it is believed to be an accident and not a suicide or homicide."

37. In asserting its first basis for denying The Claim for benefits under the Policy, AIG (on behalf of National Union) knew that the Bellevue Police Department, the King County Medical Examiner's Office, and the State of Washington Department of Health each concluded Ms. Hale's death was an accident.

38. In asserting its first basis for denying the Claim for benefits under the Policy, AIG (on behalf of National Union) knew that as part of its own investigation it hired Covent Bridge Group, which informed AIG (on behalf of National Union) that Ms. Hale's death resulted from an accidental fell from a hotel balcony and was not a suicide or homicide.

39. In asserting its first basis for denying the Claim for benefits under the Policy, AIG (on behalf of National Union) knew it had no evidence to support that Ms. Hale's death was the result of anything other than "a sudden, incidental, undesirable or unfortunate event, happening or circumstance, often with lack of intention or necessity, that causes injury."

40. In asserting its first basis for denying the Claim for benefits under the Policy, AIG (on behalf of National Union) knew it was breaching the Policy.

41. The second reason AIG (on behalf of National Union) asserted for denying the Claim was that "to the extent that Ms. Hale's death was the result of an unanticipated accidental Injury, we find that based on the toxicology testing results and the known effects of alcohol at the level of .095 g/100mL, there is sufficient documentation to support a position that the loss resulted from impairment related to intoxication."

42. In asserting its second basis for denying the Claim for benefits under the Policy, AIG (on behalf of National Union) knew that when relying on an exclusion to deny coverage, it had the burden to establish that the loss fell solely within that exclusion.

43. In asserting its second basis for denying the Claim for benefits under the Policy, AIG (on behalf of National Union) knew that the stated basis did not satisfy its burden of establishing that the loss fell solely within the cited exclusion.

44. In asserting its second basis for denying the Claim for benefits under the Policy, AIG (on behalf of National Union) knew that Ms. Hale's death did not *result from* her intoxication, but rather from her fall.

45. In asserting its second basis for denying the Claim for benefits under the Policy, AIG (on behalf of National Union) knew that neither the Bellevue Police Department, the King County Medical Examiner's Office, nor the State of Washington Department of Health concluded that Ms. Hale's death resulted from her intoxication.

46. In asserting its second basis for denying the Claim for benefits under the Policy, AIG (on behalf of National Union) knew it was breaching the Policy.

47. In denying the Claim for benefits, AIG (on behalf of National Union) informed Mr. Hale that he could submit an internal appeal.

48. By letter dated October 2, 2020, Mr. Hale informed AIG (on behalf of National Union) that he intended to appeal its decision, and in doing so he asked AIG (on behalf of National Union) to provide him with documents and information that ERISA required it to provide to him in advance of him submitting his appeal.

49. When AIG (on behalf of National Union) received Mr. Hale's letter dated October 2, 2020, it knew ERISA required it to produce the requested documents and information within 30 days of receiving his request.

50. By letter dated October 15, 2020, AIG (on behalf of National Union) acknowledged receiving Mr. Hale's letter dated October 2, 2020, informed him it was reviewing his requests and would provide an update as soon as possible, but it provided no substantive response to his request for documents and information.

51. Within the first 30 days of receiving Mr. Hale's request for documents and information, AIG (on behalf of National Union) produced no documents and provided none of the requested information.

52. In failing to provide the requested documents and information within 30 days of receiving Mr. Hale's request, AIG (on behalf of National Union) knew it was violating ERISA.

53. By letter dated December 9, 2020, Mr. Hale reiterated his request for documents and information, informing AIG (on behalf of National Union) that it failed to provide much of the requested documents and information requested.

54. By letter dated December 11, 2020, AIG (on behalf of National Union) provide limited additional information but rejected Mr. Hale's request for additional documents and information.

55. When AIG (on behalf of National Union) rejected Mr. Hale's request for additional documents and information, it knew that ERISA imposed on it a fiduciary duty to act in the best interests of its plan participants and beneficiaries at all times and it knew that fiduciary duty imposed on it the duty of candor.

56. In rejecting Mr. Hale's request for documents and information, AIG (on behalf of National Union) knew it was violating ERISA and breaching the fiduciary duties it owed to Mr. Hale.

57. In rejecting Mr. Hale's request for documents and information, AIG (on behalf of National Union) knew it was prejudicing Mr. Hale's ability to perfect his appeal, because it was

7

withholding from him information that only it had access to and which it knew Mr. Hale could not obtain through other means.

58. By letter dated February 4, 2021, Mr. Hale timely submitted an internal appeal.

59. In submitting his internal appeal, Mr. Hale reiterated his request that AIG (on behalf of National Union) provide him with documents and information that it previously refused to provide.

60. After receiving Mr. Hale's internal appeal, AIG (on behalf of National Union) did not respond to Mr. Hale's request for it to provide him with document and information that he believed had been wrongly withheld from him.

61. In submitting his internal appeal, Mr. Hale provided AIG (on behalf of National Union) with evidence, argument, and case law supporting his position that AIG (on behalf of National Union) had wrongly denied his claim for benefits.

62. In reviewing Mr. Hale's appeal, AIG (on behalf of National Union) knew that to rely on the Policy's intoxication clause, it was required to prove that Ms. Hale's death resulted from her intoxication.

63. In reviewing Mr. Hale's appeal, AIG (on behalf of National Union) knew that an exclusion in an insurance policy that excludes deaths *resulting from* intoxication—but not those contributed to by intoxication—excludes only those deaths where the intoxication itself was the direct cause of the insured's death.

64. In reviewing Mr. Hale's appeal, AIG (on behalf of National Union) knew there was no evidence supporting a conclusion that Ms. Hale's death *resulted from* her intoxication; that is, it knew AIG knew there was no evidence that Ms. Hale's death *resulted from* anything other than the multiple blunt force injuries she suffered when she fell seven stories from her hotel balcony.

65. In reviewing Mr. Hale's appeal, AIG (on behalf of National Union) knew Ms. Hale was also covered under an accidental death policy insured by Lincoln Financial Group, and it knew

Lincoln Financial Group approved the Claim even though that policy also included an intoxication exclusion.

66. By letter dated March 1, 2021, AIG (on behalf of National Union) informed Mr. Hale that the "ERISA Appeal Committee (the 'Committee') of National Union Fire Insurance Company of Pittsburgh, PA (the 'Company') complete their review of the above referenced claim. After careful review of the claim for benefits under this policy and your appeal letter dated February 4, 2021, the Committee has determined that no benefits are payable under this policy."

67. In upholding the prior claim decision, AIG (on behalf of National Union) abandoned the argument that Ms. Hale's death was not an accident.

68. In upholding the prior claim decision, AIG (on behalf of National Union) asserted, "the Committee finds that based on the toxicology testing results and the known effects of alcohol at the level of .095 g/100mL, there is sufficient documentation to support a position that the loss resulted from impairment related to intoxication. Losses such as these are specifically excluded from coverage under the policy."

69. In upholding the prior claim decision, AIG (on behalf of National Union) knew the Policy did not exclude coverage for deaths "result[ing] from impairment related to intoxication." That is, AIG knew the Policy excluded deaths "resulting from … the Insured Person being intoxicated or under the influence of any controlled substance unless taken under the advice of a Physician."

70. In upholding the prior claim decision, AIG (on behalf of National Union) knew Ms. Hale's death did not "result[] from … the Insured Person being intoxicated or under the influence of any controlled substance … ."

71. In upholding the prior claim decision, AIG (on behalf of National Union knew that a different insurance company, C.U.N.A., concluded that Ms. Hale's death was not precluded by that policy's limitation on coverage for deaths related to alcohol.

9

72. In upholding the prior claim decision, AIG (on behalf of National Union) did not conclude that Ms. Hale's death "result[ed] from … the Insured Person being intoxicated or under the influence of any controlled substance … ."

73. In upholding the prior claim decision based on language not found in the Policy, AIG (on behalf of National Union) breached the Policy.

74. Mr. Hale has satisfied all conditions precedent to receiving benefits under the Policy.

75. Because AIG (on behalf of National Union) acts as both the decision maker and the payor of benefits, it suffers from an inherent conflict of interest.

76. In rejecting the Claim and appeal, AIG (on behalf of National Union) placed its own interest ahead of Mr. Hale's.

77. Because AIG (on behalf of National Union) acted in its own self-interest, because it lacks the neutrality and objectiveness required of a fiduciary, and because it failed to comply with the requirements of ERISA, its denial of the Claim and appeal is entitled to no deference.

78. The court should apply the de novo standard of review to the Claim and appeal.

## FIRST CLAIM FOR RELIEF

**(Against AIG and National Union for Benefits Due Under the Policy)**

79. Mr. Hale incorporates by reference all other paragraphs of this Complaint.

80. Mr. Hale brings this action under ERISA § 502(1)(1)(B), 29 U.S.C. § 1132(a)(1)(B), which provides a right to file a civil action to recover benefits due under the Policy.

81. The Policies are contracts of insurance.

82. The evidence presented to AIG and National Union establishes that Mr. Hale was (and remains) entitled to benefits under the terms of the Policy.

83. Mr. Hale has satisfied all conditions precedent to receiving benefits under the Policy.

84. By the acts and omissions described throughout this Complaint, and through others likely to be uncovered through discovery, AIG and National Union breached the terms of the Policy.

85. By the acts and omissions described throughout this Complaint, and through others likely to be uncovered through discovery, AIG and National Union knowingly and intentionally breached the terms of the Policy.

86. As a direct and proximate cause of AIG's and National Union's breaches of the Policy, Mr. Hale has been denied benefits owed to him since June 28, 2019.

87. AIG's and National Union's handling of the Claim and appeal for benefits was attended by serious procedural irregularities that violated ERISA.

88. AIG and National Union ignored and/or unreasonably discredited information supporting Mr. Hale's entitlement to benefits under the Policy.

89. Plaintiff brings this action to recover benefits (with interest) owed under the Policy.

90. Under 29 U.S.C. § 1132(g), Mr. Hale is entitled to an award of reasonable attorneys' fees and costs incurred in bringing this action.

**WHEREFORE**, Plaintiff Jeffrey Hale asks that judgment be entered in his favor and against the Defendants as follows:

1. For all benefits due and owing under the Policy;
2. For all pre- and post-judgment interest (statutory and moratory) as permitted by law;
3. For reasonable attorneys' fees and costs as permitted by law;
4. For such other and further relief that this Court deems just and proper.

Respectfully submitted this 26th day of April 2020,

                                                 *s/ Timothy Garvey*

                                                 Shawn E. McDermott
                                                 Timothy M. Garvey
                                                 McDermott Law, LLC
                                                 4600 S. Ulster St., Suite 800
                                                 Denver, CO 80237
                                                 (303) 964-1800
                                                 (303) 964-1900
                                                 shawn@mcdermottlaw.net
                                                 tim@mcdermottlaw.net

                                               *Counsel for Plaintiff*

Plaintiff's Address:

3007 Indiana Street Northeast
Albuquerque, NM 87110

12